JANE B. STRANCH,
dissenting.
The undisputed facts show that Amanda Flynn, then Amanda McGinnis, was injured in 2009 when a brick was thrown through her car window, and she became afraid to drive herself or live alone. As a result, she accepted the hospitality of her boyfriend’s mother while she recovered and looked for her own apartment. Amanda did not pay rent, and she moved most of her personal belongings to a month-to-month storage facility. Amanda stayed with her boyfriend’s mother for five months, until the day that her boyfriend crashed her car. At the time of the accident, Amanda was scheduled to sign the lease on her own apartment in two days, and she had removed some of her things from storage in preparation.
Scott Flynn, then Amanda’s boyfriend, and his mother had insurance policies that covered Scott as a driver of a “non-owned car” but excepted from that coverage cars owned by a “person” who “resid[es] in the same household” as the insured person or his relatives. Ohio courts have explained that the purpose of similar exclusions is “to protect the insurer from a situation where an insured would pay for but one policy and be covered while regularly driving” other cars owned by members of the same household. E.g., Napier v. Banks, 19 Ohio App.2d 152, 250 N.E.2d 417, 419 (1969).
The question here is not whether Amanda “resided” in Sallie Flynn’s apartment, as the majority suggests. The question is whether Amanda was a member of Sallie’s or Scott’s “household” during the time she accepted their hospitality. Under Ohio law, she was not.
Ohio has defined “household” to mean “those who dwell under the same roof and *439 compose a family: a social unit comprised of those living together in the same dwelling place.” Shear v. W. Am. Ins. Co., 11 Ohio St.3d 162, 464 N.E.2d 545, 548 (1984) (emphasis added). This language plainly means that a “household” is not merely synonymous with “dwelling,” but requires something more. How much more is less clear. It could mean that a household may only consist of relatives living under one roof, as Amanda contends, but the term “social unit” in the explanatory second clause could suggest that the “family” could include non-relatives. Either way, a “unit” is required. The majority divides the definition to hold that a household can be composed of a family or a social unit, the latter requiring only a group of people who live together. Not only does this reading ignore the colon that makes the second clause explanatory of the first, but it also contradicts the analysis Ohio courts have laid out for resolving the “household” question.
Take Shear, for example. There, the question was whether a father was covered by the insurance policy of his adult son who lived in the same dwelling. Under the insurance policy, the father would be covered if he was “living in [the son’s] household.”[1] 464 N.E.2d at 548. Obviously, the two were relatives. After reciting the definition of household discussed above, the court considered the following facts: the two lived in the same house, the son was fully emancipated and paid his own bills, and the son had lived with his father since birth. Id. at 548-49. The court held that this did not establish separate households because (1) there was no evidence of an arm’s length arrangement, and (2) there was no evidence that the arrangement was temporary in nature. Id. at 549. “Rather, there is ample evidence to support the finding that the Shears are part of a family unit and are members of the same household and have been so for many years.” Id. If the majority were correct that the “social unit” at issue need only be a group of people living together in one dwelling, all of the Shear court’s analysis after the first step of establishing that the two lived in the same house would have been unnecessary. But the analysis of what constitutes a “household” was necessary there and is applicable here.
As another example, take Napier, a case cited by the majority. 250 N.E.2d 417. There, an adult daughter had moved in with her father for approximately four to six months after her divorce. The insurance policy was similar to the one at issue here: the policy would cover the daughter as a driver of the father’s car unless the father was a “relative ... who is a resident of the same household.”[2] Id. at 418. The court said that there was no reason to dwell on the meaning of the term “resident” because the two plainly resided in the same physical structure. Id. at 419. “[T]he word ‘household’ cannot reasonably be equated with the word ‘house.’ [0]rdinarily, the word ‘household’ is synonymous with ‘family.’ ” Id. The court then said that the relatively brief four to six month period of occupancy, the temporary nature of the arrangement, and the fact that the daughter’s things were in storage *440 showed that the daughter was not a member of her father’s household. Id. at 419. “In fact, other than the relationship of the parties, the record fails to reflect any of the usual characteristics associated with the same household or a single family.” Id.
Other than the fact that Amanda was a non-relative, a fact that does not support the majority’s argument, I do not see any meaningful difference between Amanda’s circumstances and the ones in Napier. Amanda stayed with her host for five months on a temporary basis while her things were in storage and she looked for her own apartment. Other Ohio cases confirm that a temporary arrangement does not create a shared household. In Thompson v. Preferred Risk Mutual Insurance Co., the Ohio Supreme Court— after noting that where a person receives mail was “hardly dispositive of the issue” — held that two brothers resided in the same household because the home was the “permanent residence” of both. 32 Ohio St.3d 340, 513 N.E.2d 733, 735 (1987).
Rather than acknowledging the distinction in Ohio law between the terms “reside” and “household,” the majority appears to hold that Amanda was generally “residing in the same household” as Sallie and Scott because she lived in the same apartment for five months, filled out a change of address form, and ate meals with her host. This is said to show lack of an arm’s length relationship under Shear, and, therefore, that Amanda was a member of her host’s household. The majority’s reliance on the arm’s length relationship analysis misses two important points from Shear: first, the question of an arm’s length relationship was relevant precisely because the person in question there was the son of the home owner, and second, the temporary nature of a residency can also undermine the existence of a shared household. 464 N.E.2d at 549.
The majority decision also ignores the purpose of these types of policy exclusions, which is to protect insurers from those who would pay for but one policy when they should pay for two. See Napier, 250 N.E.2d at 419. To hold that the policy excludes coverage for a car that is driven by the insured but owned by a convalescent temporarily staying in the driver’s home exceeds the purpose of the exclusion and goes beyond the reasonable expectation of the parties. For the insured, it creates unanticipated gaps in coverage. It also transgresses traditional expectations of hospitality by potentially exposing those who temporarily open their homes (for example, someone who allows a friend to stay at his home to receive nearby medical treatment) to unexpected liability.
In sum, Ohio law supports the conclusion that Amanda was not a member of Sallie’s or Scott’s household at the time of the accident. Because I think that the majority’s holding is contrary to Ohio law, I respectfully dissent.

. As the majority explains, the policy in Shear covered "[rjelatives living in [the insured’s] household.” 464 N.E.2d at 548. That provision contained two defining terms: "relative” and "household.” Here, the policy excludes cars owned by a “person residing in the same household,” so we need only examine the meaning of the term “household."

. There is no indication that the term “relative” affected the court’s analysis of the term “household” as the majority suggests in the context of Shear; rather, the term “household” presented a separate definitional issue. 250 N.E.2d at 419.